GEORGE ROE v. PHILIP B. WINSTON and Others.[1]

April 25, 1902.

Nos. 12,956—(99).

## General Verdict—Inconsistent Special Findings.

In an action for personal injuries, alleged to have been caused by the negligence of one of defendants' servants, the jury returned special findings to the effect that the servant complained of was not negligent in the respect charged in the complaint, but returned a general verdict for plaintiff. It is *held* (1) that the special findings control the general verdict, and, as they are inconsistent therewith, there must be a new trial; and (2) that the verdict cannot be sustained on the theory that an issue of negligence, not covered by the allegations of the complaint, was litigated on the trial with the consent of the parties.

## Respondeat Superior.

The true test in determining whether the doctrine of respondeat superior applies in any case is, does the person holding the position of

[1] Reported in 90 N. W. 122.

master have, for the time being, or is it his duty to assume, control over the servant in respect to the performance of his duties? If such right or duty of control exists, the doctrine applies; otherwise not. The right to employ and discharge the servant is an element tending to show a right of control, but is not conclusive or indispensably necessary; the ultimate test being the right or duty to control.

## Fellow Servants—Wisconsin Statute.

Defendants were copartners engaged in the general business of railroad construction work, and had entered into a contract with a railroad company to do certain grading in straightening the line of the company's road at a point in the state of Wisconsin. To facilitate its performance, and as a part of the contract between the parties, the railroad company furnished defendants with certain work trains, composed of cars and engines, with employees to operate the same. The servants in charge of such trains remained in the general employ of the railroad company, but were paid by defendants, and, for the time being, were under their direct charge and control. Plaintiff, a brakeman on one of such trains, was injured by the alleged negligence of the engineer. It is *held*: (1) That the doctrine of respondeat superior applies, and that the servants in the control and management of such trains were, for the time being, the servants and employees of defendants; and (2) that in the performance of this work defendants came within the scope and purpose of R. S. (Wis.) 1898, § 1816, which provides in substance and effect, that every railroad company operating a railroad wholly or in part within that state shall be liable for damages sustained by any of its employees while engaged in the performance of their duties, by reason of the negligence of fellow servants, the injured servant being free from contributory negligence.

## Contributory Negligence.

The evidence received on the trial of the action was not conclusive that plaintiff was guilty of contributory negligence.

Action in the district court for Hennepin county to recover $20,000 for personal injuries. The case was tried before McGee, J., and a jury, which rendered a general verdict in favor of plaintiff for $10,040, and returned the special findings which are set out in the opinion. Defendants having moved for judgment notwithstanding the verdict or for a new trial, the court made an order denying the motion for judgment, and denying the motion for a new trial upon condition that plaintiff consent to reduce the

verdict to $7,500, from which order defendants appealed. Reversed, and new trial granted.

*T. A. Garritty* and *Morton Barrows,* for appellants.

*Humphrey Barton* and *John E. Samuelson,* for respondent

BROWN, J.

Action to recover damages for personal injuries alleged to have been caused by the negligence of defendants. Plaintiff had a verdict in the court below and defendants appealed from an order denying their alternative motion for judgment notwithstanding the verdict or for a new trial.

Several questions are presented and argued in the briefs of counsel, but it is unnecessary to consider them all. As the result of our examination of the record is a new trial, we shall consider only some of the main propositions presented.

Defendants are copartners, engaged as such in general railroad construction work. During the year 1899 they were engaged in grading a portion of the track of the Chicago, St. Paul, Minneapolis & Omaha Railroad in the vicinity of Knapp, Wisconsin. This grading was being done for the purpose of straightening the line of the road. The work was under the full charge and management of defendants, being performed under a contract with the railroad company by which the latter undertook to, and did, furnish them with certain trains, composed of engines, cabooses, dump and flat cars, and employees to operate and manage the same. Plaintiff was a brakeman employed in and about one of the trains, and was injured by the alleged negligence of an engineer in starting the same without having received a signal from plaintiff to do so. The negligence charged in the complaint is that, by virtue of certain rules, customs, and regulations of defendants in operating the trains so under their control, the engineer was guided in his movements of the train by signals from the plaintiff, and was not to move the same upon the signal of any other person; that the engineer in charge of the train in question carelessly and negligently started the same in motion without first having received a signal from plaintiff to do so, in consequence of which plaintiff was injured.

Whether the engineer was guided solely by signals from the brakeman was the only question litigated on the trial, as respects, defendants' negligence; and the court submitted to the jury two special questions bearing directly upon that issue, as follows:

"1. In the performance of the work in which this plaintiff was. engaged at the time of the accident, was it an established usage and custom in the operation of the trains employed by Winston Bros. for the engineer of the trains to receive and act upon the signals of the brakeman only?

"2. At the time and place of the accident to plaintiff Roe, was it the customary practice and usage of the engineers upon the trains, there being operated by Winston Bros. to act immediately upon signals to start given by H. C. Hanson, superintendent in charge of said work for Winston Bros., without such signal being repeated by the brakeman?"

The jury answered the question whether it was an established usage and custom in the operation of the trains employed on this. occasion for the engineer to receive and act upon signals from the brakeman only in the negative, and the question whether it was the custom and practice of such engineer to act immediately upon signals from the superintendent in the affirmative, but returned a general verdict for plaintiff.

It is contended by defendants that the special findings of the jury are inconsistent with the general verdict, and negative the allegations of negligence found in the complaint, and that for this reason the general verdict must be set aside and a new trial granted.

Plaintiff insists that, while the special findings may in a measure negative the allegations of negligence found in the complaint, the further issue, whether defendants furnished plaintiff with a reasonably safe place in which to perform the work of his employment, was litigated by the consent of the parties on the trial, and that the evidence is ample to support their finding that defendants were chargeable with negligence in that respect; and, further, that the engineer knew when he started the train, or in the exercise of reasonable care ought to have known, that plaintiff was at the time in a position of peril. If plaintiff's contention in this respect were true, it would render immaterial the question whether the

special findings are inconsistent with the general verdict in respect to the negligence charged in the complaint.

But an examination of the record satisfies us that the question whether defendants were chargeable with negligence for failing to provide plaintiff with a reasonably safe place in which to perform his work. was not litigated on the trial by the consent of the parties, or otherwise. While there is some evidence in the record describing with some particularity the place where the work in question was being performed, the situation of the various tracks, and all that, such evidence was material and proper upon the issues made by the complaint; and merely because of its introduction on the trial without objection is no reason for holding that the parties litigated a question not presented by the pleadings; and, further, the evidence is wholly insufficient to warrant a recovery upon any such ground, even though it be conceded that the issue was litigated. The place where plaintiff was injured was not necessarily a dangerous place to work; in fact, it was not provided as a place to work, and was rendered dangerous to plaintiff, or to any other person, only by going between the trains standing on the parallel tracks when one of them was in motion.

It appears without dispute that on the occasion complained of the superintendent gave a signal to the engineer to move his train forward, and he immediately complied with it, without waiting for a signal from the brakeman. A few moments previous to this the train had come upon the track where it was standing, when the superintendent signaled the engineer to move it forward, and plaintiff had left the train and gone to the dining cars belonging to defendants, a short distance away, and was at such cars when the signal of the superintendent was given. He heard the bell of the engine ring, and started to return to his train, which was standing at the time upon a track parallel with and very near another track upon which were some cars containing coal, the tracks being so near together as to make it extremely hazardous for a person to go between them when one train was in motion. Plaintiff, as he returned from the dining cars, entered between the moving train and the stationary cars to climb upon his train, and

was injured. It is claimed by him that he was between the cars in the act of climbing upon his train when the engineer started the same, and that the latter knew of plaintiff's position at the time, or in the exercise of reasonable care ought to have known it. It was insisted in this connection that it was the duty of the engineer, even though he had the right to move his train on the signal of the superintendent, to ascertain definitely before doing so that plaintiff and other employees connected with the train were not at the time somewhere about the train in a position of peril.

The jury found specially that plaintiff was in the act of getting upon the train when the engineer moved the same; but the evidence is conflicting upon the question whether the engineer knew that fact. The engineer testified that when he started the train plaintiff was some distance away on his return from the dining cars. The evidence made this question one for the jury, and the contention that the engineer ought, in the exercise of reasonable care, to have known of plaintiff's position, is not sustained by the evidence. Had it appeared conclusively that the engineer was chargeable with negligence in one of these respects, and the issues pertaining thereto had been voluntarily litigated on the trial, the verdict might stand, without regard to the fact that the issue of negligence as charged in the complaint was found by the jury in defendants' favor. But it does not so appear, and the submission of the specific questions makes it very apparent that the negligence charged in the complaint was the only issue with respect to that question the parties intended to litigate at the trial.

We come, then, to the question whether the special findings of the jury are inconsistent with the general verdict. The charge of negligence as set forth in the complaint, as we have already noted, is that the engineer in charge of the train, the movement of which resulted in plaintiff's injury, was chargeable with negligence in moving the same without first receiving a signal from plaintiff to do so. The theory of the complaint, as shown by its allegations, is that the engineer in the operation of his train was guided solely and exclusively by signals from plaintiff, as brakeman in charge of the train, and that to move the train upon the signal of any

other person, without its being repeated by plaintiff, was an act of negligence on his part, for which defendants are liable. Evidence was offered by plaintiff in support of his theory, and by the defendants in support of the converse of the proposition,—to the effect that the engineer was not guided in his movement of the train solely by signals from the brakeman, but that he had the right, as the second special finding of the jury affirms, to move the same immediately upon signals from the superintendent of the work. The jury found in defendants' favor, and, in effect, that the engineer was not negligent as charged in the complaint. It requires no discussion of the matter to point out the inconsistency between the special and general findings. It is apparent, and the general verdict cannot stand. We have examined the evidence, however, with care, and reach the conclusion that the case is not one in which final judgment should be ordered for defendants, and a new trial only will be granted.

In view of such new trial, it becomes proper, and perhaps necessary, to consider two other questions raised and discussed by counsel. The accident resulting in plaintiff's injury occurred in the state of Wisconsin, and the action is founded upon a statute of that state. R. S. (Wis.) 1898, § 1816. That statute provides, in substance, among other things, that every railroad company operating a railroad wholly or in part in the state of Wisconsin shall be liable to its employees in damages for all injuries sustained by them while engaged in the line of their employment, by reason of the carelessness and negligence of other employees, the injured employee being free from contributory negligence. The point is made that the defendants Winston Bros., whose general business is that of railroad construction work, are not a railroad company, nor engaged in operating a railroad within the meaning of this statute.

We have been cited to no decisions of the supreme court of the state of Wisconsin construing the statute in this respect, and in giving it an interpretation we necessarily fall back upon the decisions of our own court construing a similar statute. The Wisconsin statute is very similar, though much broader and more comprehensive than our own fellow-servant act. It provides that

every railroad company operating a line of railroad in that state shall be liable to employees for injuries received in a railroad service, when free from contributory negligence; and a railroad corporation is defined by section 1861 to mean and embrace

"Any company, association, corporation, or person managing, maintaining, operating, or in possession of a railroad whether as owner, contractor, lessee, mortgagee, trustee, assignee, or receiver."

This is very broad and comprehensive language, and clearly indicates an intention on the part of the lawmakers to include within the expressions, "railroad company," and "operating a railroad," all persons, companies, or corporations operating, or in possession of a railroad for any purpose connected with its management. The decisions of this court have given a very broad and liberal construction to our own fellow-servant act. Many cases have been before us involving its application to particular servants and to what particular railroad work or service it applies. We had occasion very recently to examine the question, and in the case of Schus v. Powers-Simpson Co., 85 Minn. 447, 89 N. W. 68, held that the statute applied to a lumber company operating a line of railroad in its own private interests, and not as a common carrier of passengers or freight. We discover no reason for disturbing or departing from the decision there made.

The object of statutes of this character is to protect railroad employees from the dangers and hazards peculiar to railroad service, and particularly those hazards and risks incident to the operation of railroad trains. Mikkelson v. Truesdale, 63 Minn. 137, 65 N. W. 260; Nichols v. Chicago, M. & St. P. Ry. Co., 60 Minn. 319, 62 N. W. 386; Leier v. Minnesota B. L. Ry. & T. Co., 63 Minn. 203, 65 N. W. 269; Blomquist v. Great Northern Ry. Co., 65 Minn. 69, 67 N. W. 804. These cases serve only to show the application of the statute, and the particular services intended to be covered, and are not perhaps strictly in point in this case; though the case of Schneider v. Chicago, B. & N. Ry. Co., 42 Minn. 68, 43 N. W. 783, which was followed in Moran v. Eastern Ry. Co. of Minn., 48 Minn. 46, 50 N. W. 930, is in point, and

practically decisive of the question. In that case a railroad company was engaged in work very similar to that being performed by Winston Bros. in the case at bar. The company was filling in and constructing an embankment for additional tracks for its yards in West St. Paul, this state, in and about which work it employed a construction train with a crew of men. The plaintiff in the action was a fireman on such train, and was injured by the negligence of the engineer. The court held that the defendant was liable, that the work being performed came within the scope of the statute, and a verdict against the company was sustained. If the railroad company in that case came within the meaning and scope of our own statute, clearly the work being performed by Winston Bros., being of the same general character, comes within the scope of the Wisconsin statute.

It is not necessary that the person, company, or corporation referred to in the statute should be in control and operating an entire railway system; it is sufficient that it is in possession and in the operation of some portion thereof. And, within our own decisions, railroad grading and construction work of the character of that shown in this case—for a railroad company already constructed, equipped, and in operation—comes within the purview and scope of the statute. If the Omaha Company had been performing the same work, it would, within the Schneider case, have been liable for the injury complained of by the plaintiff.

The case of McKnight v. Iowa, 43 Iowa, 406, is a case on all fours with that at bar. In that case the contractor was engaged in doing construction work for the railway company, being provided by the company with a train of cars and employees to operate the same. One of the employees of the railway company in charge of such train was injured in its operation while so in charge and under the control of the construction company, and the court held that the construction company was a railroad corporation engaged in operating a railroad, within the meaning of a similar statute. In the case at bar plaintiff was not injured while engaged in construction work proper, but in and about the operation of a train of cars, the hazards and dangers incident to which the legislature intended to provide against. Our conclusion on this branch

of the case is that the Wisconsin statute, broad and comprehensive as it is, must, in order to effectuate the intention of the legislature of that state, be held to include and bring within its scope and purpose the defendants in this case. See Ean v. Chicago, 95 Wis. 69, 69 N. W. 997.

It is also contended by appellants that the engineer, whose negligence is claimed to have been the cause of plaintiff's injury, was the employee and servant of the railroad company, and not of Winston Bros., and that the railroad company alone is liable for his conduct. It is true that the train and cars belong to, and the engineer and employees operating the same were in the general employ of, the railroad company. The company furnished the train to defendants, together with employees to operate the same, to aid and facilitate the performance of the contract. But the train and employees, for the time being, were within the direct control and management of Winston Bros., and in no sense, while engaged in this particular service, under the control of the railroad company.

The rule of law relating to the doctrine of respondeat superior was correctly laid down in Aldritt v. Gillette-Herzog Mnfg. Co., 85 Minn. 206, 88 N. W. 741. It was there said that

"The liability of one person for the negligent acts and omissions, of another rests upon the relation of superior and subordinate, as master and servant, and the consequent control which the superior has over the acts of the subordinate in the performance of his duties. There can be no liability, therefore, unless such relation and such right of control exist, either by force of the contract between the parties, or the duty to assume control is imposed as a matter of law." The right or duty to control, for the time being, is the true test in determining whether the relationship exists and the doctrine applies. Rait v. New England F. & C. Co., 66 Minn. 76, 68 N. W. 729; Gahagan v. Aermotor Co., 67 Minn. 252, 69 N. W. 914; Vosbeck v. Kellogg, 78. Minn. 176, 80 N. W. 957. The right to employ, or the right to discharge, the servant is not conclusive one way or the other. While those elements are important, perhaps, in determining the question, they are not conclusive, either that the relationship does or does not exist, nor necessarily determina-

tive of the question whether the doctrine applies in any particular case. Donovan v. White Moss [1893] 1 Q. B. 629; Rourke v. Laing, 2 C. P. Div. 205; Jones v. Scullard [1898] 2 Q. B. 565; Byrne v. Kansas City, Ft. S. & M. R. Co., 9 C. C. A. 666, 61 Fed. 605; Miller v. Minnesota & N. W. Ry. Co., 76 Iowa, 655, 39 N. W. 188; Powell v. Construction Co., 88 Tenn. 692, 701, 13 S. W. 691; Coughlan v. City of Cambridge, 166 Mass. 268, 44 N. E. 218; Hasty v. Sears, 157 Mass. 123, 31 N. E. 759; Samuelian v. American T. & M. Co., 168 Mass. 12, 46 N. E. 98; 2 Bailey, Mast. & Serv. 3185, et seq.; 20 Am. & Eng. Enc. (2d Ed.) 178.

The case of Coughlan v. City of Cambridge, supra, is very similar to the case at bar. There the city of Cambridge was engaged by means of a locomotive and train, with employees to manage the same, hired by it from the Fitchburg Railway Company, in transporting gravel from one portion to another of certain premises owned by it for the purpose of filling and grading grounds around its public works. The track used by it was constructed by the railway company, to whom, with the exception of the ties, the track belonged, and by whom it was removed when the work was completed. By the contract between the city and the railway company, the latter agreed to furnish for the use of the city the locomotive and twenty dump cars, together with a conductor, engineer, fireman, and one brakeman to manage the same, to keep the locomotive and cars in repair, and to furnish fuel and supplies for the same. It was held that the railway employees, though in the general employment of the railroad company, employed by the company, and subject to discharge by it, were for the time being servants of the city, and under its control. The city was held liable for the negligence of such employees.

It was held in Byrne v. Kansas City, Ft. S. & M. R. Co., supra, that a railway company is not responsible for negligence in the operation of an engine, when at the time of the accident the engine and the crew by which it was operated were rented to and under the control of another company. The opinion in that case is quite full, and reviews many of the authorities, distinguishing cases of this kind from those holding that where a person lets a carriage on hire to another he in no sense places the coachman under the

control of the hirer, except that the latter may indicate the destination to which he may wish to be driven, and is alone responsible for the negligence of the driver,—the so-called "carriage cases." See also 9 Central Law J. 241, and cases cited.

No other questions presented in the briefs need be considered. Some are questions of practice, and not likely to arise on another trial, and those we have already touched upon are the pivotal questions in the case. The result is that, because the special findings of the jury negative the allegations of negligence relied upon in the complaint, there must be a new trial. We may say, in taking leave of the case, however, that the evidence on the subject of plaintiff's contributory negligence, being conflicting with respect to whether plaintiff entered between the two trains before or after the train in question was moving, made a case for the jury.

Order reversed, and a new trial granted.