ELLEN READY v. PEAVY ELEVATOR COMPANY.[1]

April 24, 1903.

Nos. 13,448—(68).

## Contributory Negligence—Special Finding.

It is *held* in this, a personal injury action, that the alleged negligence of
the defendant, the contributory negligence of plaintiff's intestate, and
whether he assumed the risks incident to the work he was doing, were,
under the evidence, questions of fact; that the general verdict is sustained
by the evidence, and is not inconsistent with the special finding returned
by the jury; and that the instructions of the trial court to the jury were
free from reversible errors.

Action in the district court for Sibley county by plaintiff as
administratrix of the estate of R. B. Ready, deceased, to recover
$5,000 for the death of decedent. The case was tried before Cad-
well, J., and a jury, which rendered a verdict in favor of plaintiff
for $2,000.

From an order denying a motion for judgment notwithstanding
the verdict or for a new trial, defendant appealed. Affirmed.

*Morton Barrows*, for appellant.

*P. J. McLaughlin* and *Thos. Hessian*, for respondent.

START, C. J.

The plaintiff's intestate, R. B. Ready, was employed by the de-
fendant to work as a carpenter in its grain elevator in the village
of Green Isle, this state. On June 9, 1901, while so working, he
was caught in a revolving line shaft, and thereby received injuries
which resulted in his death seven days thereafter. This action
was brought by his personal representative to recover damages
for his death, for the alleged reason that it was caused by the
negligence of the defendant in putting the shaft in motion without
notice, warning, or instruction to him.

There was a general verdict for the plaintiff for $2,000. The
jury also answered in the affirmative the following question:

[1] Reported in 94 N. W. 442.

"In the use of his senses, and the exercise of reasonable care, ought Ready to have known that the line shaft was in motion at the time he was caught upon it and injured?"

The defendant appealed from an order denying its motion for judgment notwithstanding the verdict, or for a new trial.

It is the contention of the defendant that it conclusively appears from the evidence that it was not guilty of any negligence which was the proximate cause of the intestate's death, and, further, that his own negligence contributed thereto, and that he assumed the risks of working near the revolving shaft.

1. It is unnecessary to discuss the first claim, for, if the intestate was not guilty of contributory negligence, and did not assume the risks, the evidence is ample to establish the alleged negligence of the defendant, and its liability for his death. The evidence tends to show that the defendant directed him to work near a line shaft, and in an extremely perilous position if the shaft were put in motion without notice or warning to him, and that it did so put it in motion, and that by reason thereof he was caught by the revolving shaft and flung to his death.

2. The defendant, however, strenuously insists that the evidence conclusively shows that the intestate was guilty of negligence in the premises which contributed to his injury, and that he assumed the risks of the situation. The evidence relevant to these questions is practically the same, and they may be considered together.

It appears from the record that the intestate was a carpenter by occupation, and a man of mature years and judgment; but it does not appear what experience, if any, he had in the construction or repair of grain elevators, or the operation of the machinery therein. About a week before the accident he was employed by the defendant as a carpenter to assist in making some changes in its elevator. The principal change was to substitute a gasoline engine for a steam engine, and he was employed in building a house for the new engine. Before this work was completed, and in the forenoon of the day of the accident, the line shaft was disconnected from the old engine and attached to the new one. In doing so, it was necessary to lengthen it by a coupler, which was

left uncovered. In the afternoon the intestate was directed to go and repair a grain spout which was sixteen inches above the shaft. He complied with the order, and proceeded to construct a scaffold upon which to stand in doing the work. No claim is made that the scaffold was not properly constructed and placed. It was twenty-seven inches from the top of the scaffold to the bottom of the shaft. It was necessary for him, in order to do the work assigned to him, to stand on this scaffold and work in close proximity to the shaft with its coupler. While he was so occupied, the shaft was put in motion without notice to him. The undisputed evidence shows that just prior to the accident the shaft started, stopped, and started again; but the evidence as to how long the shaft ran the first time it was started, how long the second time, how much noise it made when in motion, and the length of time intervening between its stopping and starting again, is somewhat conflicting. The defendant's agent in charge of the elevator testified, in effect, that the shaft was in motion the first time only a short time—a little longer than a minute before it stopped; that when in motion it was itself noiseless, but when it was run for the purpose of elevating grain there was some noise from the scraping of the cups. The witness further testified on this point as follows:

"Q. Did the elevator make considerable noise when it was running? A. Not much noise; no, sir. Q. What machinery was running at that time? A. The whole business was running. Q. That doesn't make very much noise? A. Not a great deal; no."

The testimony of other witnesses tended to show that the machinery, when it was in operation, made a great noise. The evidence as to the time intervening between the stopping and starting of the shaft varies from two to twenty minutes; and as to how long it ran the second time, from five to fifteen minutes. It must, however, have been a very short time, if the testimony of a witness is correct who was working with the intestate on the scaffold, but left shortly before the accident. He testified that the shaft was not started before he left, and that he returned in four or five minutes, and that the accident occurred in his absence.

The defendant's superintendent testified that the intestate, in

response to a question put by him as to how he got hurt, stated that he was nailing the spout overhead on the side nearest to him, and then attempted to crawl under the shaft to nail the other side of the spout, and was caught by the shaft in the back of his vest. This conversation took place shortly after the intestate had been taken home to his wife and children, and at a time when it was a great effort for him to speak. Counsel for the defendant concedes that,

"If decedent had been caught and injured immediately upon the starting of the machinery, it would undoubtedly have been a question for the jury to determine whether or not the defendant was guilty of negligence in so starting the machinery without warning, but it is beyond the realm of dispute that decedent was not so caught and injured."

It is clear from the evidence that the intestate was not injured immediately after the machinery started the first time. On the contrary, there was evidence, as already suggested, tending to show that he was caught and injured very shortly after the shaft was started the second time. Whether he attempted to crawl under the shaft to get to the opposite side of the spout was, in view of the circumstances under which his alleged admission to that effect was obtained, a question of fact. If, however, it appears so conclusively from the whole evidence that reasonable minds could not draw different conclusions therefrom that the intestate knew, or in the exercise of ordinary care must have known, that the shaft was in motion for a time long enough before he was caught by it to enable him to appreciate his peril and avoid it by the exercise of ordinary care, it must be held, as a matter of law, that he was guilty of contributory negligence, and assumed the risks incident to continuing his work while the shaft was revolving. If such were the case, he had all the information in the premises that he would have had if the defendant had warned him that the shaft was to be put in motion.

This brings us to the serious question in this case: Does it conclusively appear from the record that the intestate had, or must be presumed to have had, such timely notice and knowledge that the shaft was in motion, and of his peril by reason thereof? In

considering this question, it is well to note that negligence is usually a question of fact, and that it is only in exceptional cases, where but one conclusion can be drawn from the undisputed evidence, that it is one of law; that, where a charge is made against a dead man that he was guilty of negligence causing his death, the presumption is very strong that, prompted by the instinct of self-preservation, he exercised due care, and that the presumption continues until the contrary is clearly made to appear; that the intestate had a right to assume that the defendant, having directed him to work in a safe place if the shaft was not put in motion, but dangerous if it were, would not set it in motion without warning him; and that it was necessary for him, in order to do the work assigned to him, to keep his mind and eyes on the work, and not on the shaft, the spout to be repaired being above the shaft.

Now, accepting, as we must in support of the general verdict, the correctness of the evidence most favorable to the plaintiff, we cannot hold that it conclusively appears, as a matter of law, from the undisputed evidence, that the intestate was guilty of contributory negligence, or that he assumed the risks. If it were conclusively established that when the shaft was first set in motion the intestate knew, or ought, in the exercise of ordinary care, to have known, such fact, it would be difficult to resist the conclusion that he might have avoided injury by due care; but it is far from clear that he ever knew or ought to have known of the starting of the shaft the first time. The only way he could have been advised of the fact was through his sense of hearing. In view of the limited time—a little longer than a minute—the shaft was in operation the first time, the slight noise it made, and the fact that his attention was necessarily directed to his work, and not to the shaft below, it is reasonably clear that he was never in any manner advised of the starting of the shaft the first time. In any event, the question was made a disputable one by the evidence. It follows that in considering the evidence as to the starting of the shaft the second time, and the resulting injury to the intestate, it cannot be assumed that he knew of the first starting thereof. On the contrary, such alleged fact must be eliminated, for by the evidence it is in dispute. The suggestions we have made as to the first

starting of the shaft apply to the evidence as to the starting of it the second time, for as to the intestate the case stands as if the shaft had not been in motion before the time of the accident. We accordingly hold that the undisputed evidence does not establish the intestate's alleged negligence, as a matter of law, nor that he assumed the risks, and, further, that the general verdict is sustained by the evidence.

3. It is also claimed by the defendant that the special finding of the jury is inconsistent with the general verdict, and must therefore prevail. If it is reasonably possible to construe a special finding of a jury so as to sustain their verdict, it must be done. Vogt v. Honstain, 85 Minn. 160, 88 N. W. 443. There is no difficulty in so doing in this case. Waiving the suggestion that the language of the finding limits the knowledge of the intestate to the precise time he was caught and injured by the shaft, there is no finding that he had such timely notice or knowledge that the shaft was in motion as to enable him to appreciate his peril by reason thereof, and avoid it by the exercise of due care. Both the general verdict and the special finding may be true; hence they are not inconsistent.

4. The trial judge fully and correctly instructed the jury as to what facts, if proven, would establish the negligence and the contributory negligence of the respective parties. He unnecessarily gave abstract definitions of negligence of the defendant, contributory negligence, and proximate cause, which the defendant here assigns as error. They were as follows:

"Negligence is the absence of such care as persons of ordinary prudence are expected to exercise under similar circumstances." "But the defendant further claims that the deceased was guilty of contributory negligence, which contributed to his injury, and without which it would not have happened. I state to you now that if you so find from the evidence that Mr. Ready was guilty of such contributory negligence, that is, negligence which contributed to his injury, and without which it wouldn't have happened, then and in that case the plaintiff in this case is not entitled to recover." "A proximate cause is an immediate, direct, or efficient cause of injury."

In the first definition it is apparent that the word "expected" was inadvertently used for "accustomed."

The second one is not strictly accurate, but it seems, on its face, to have been given as one of the defendant's claims. If so, it has no right to complain. The third one was not erroneous. It is clear that none of them were prejudicial to the defendant, for the charge of the trial judge, taken as a whole, was clear and accurate. Other exceptions to the court's charge are urged, but we find no reversible error in the record.

Order affirmed.