G. H. KRUMDICK v. CHICAGO & NORTHWESTERN RAILWAY COMPANY.[1]

July 10, 1903.

Nos. 13,544—(184).

**General Verdict.**

A general verdict upon issues and evidence properly submitted is presumed to have decided every fact or deduction therefrom essential to support it, while a special finding of the jury must be limited and controlled by its specific terms.

**Special Finding.**

Where the special finding, upon any reasonable inference or fair and sensible view of its language, can be reconciled with the general verdict, this course should be adopted, and the general verdict upheld.

**Negligence—Contributory Negligence.**

In an action against a railway company for negligence in furnishing a brakeman with a car having a defective coupling appliance, a general verdict for plaintiff *held* not to be controlled by a special finding that a defective drawbar was known to have been lower than one on the next car, since it does not follow that such difference, as a matter of law, imposes upon the employee a knowledge of the risks and dangers incurred by its use.

[1]Reported in 95 N. W. 1122.

Action in the district court for Winona county by plaintiff as administrator of the estate of Jacob C. Schneller, deceased, to recover $2,000 for the death of decedent. The case was tried before Snow, J., and a jury which rendered a verdict in favor of plaintiff for $450. From a judgment entered pursuant to the verdict defendant appealed. Affirmed.

*Brown, Abbott & Somsen,* for appellant.

*Webber & Lees,* for respondent.

LOVELY, J.

Action by an administrator for the death of a freight brakeman, employed on defendant's road, occurring through the alleged negligence of the company in providing an unsuitable car for intestate's use, as well as the failure of an engineer and fireman properly to perform their duties. At the close of the evidence defendant requested a directed verdict, which was refused; plaintiff recovered; defendant moved for judgment notwithstanding the verdict, which was denied. This appeal is from the judgment.

On this review we may accept the following facts as having been sufficiently supported by the evidence to authorize the verdict: Intestate was a rear brakeman on a freight train composed of an engine, nine cars, and a caboose. This train was made up at Waseca about two o'clock on the morning of May 14, 1901, and started for Evans, a station west of Mankato, on defendant's road. The train had proceeded about thirty miles when, descending a steep grade, it became necessary to slacken its speed to enable the engineer to observe signals at a railway crossing. At this time intestate was standing upon the top of one of the cars near the caboose; there was a break in the coupling apparatus between the third and fourth rear cars dividing the train in two sections; the latter fell behind; the engineer, ignorant or unmindful of the break, slackened the speed of the engine, when the rear section ran into the forward one, causing a violent collision, which precipitated intestate upon the track, where he was run over and instantly killed.

While the train was being made up at Waseca, and before it left on the trip to Evans, it was examined and passed for use by two of the company's inspectors. The conclusion, however, is authorized that

this inspection was inadequate, and did not disclose the defects in the coupling appliances, which resulted in intestate's death, since it appears from the evidence that the west drawbar of the third rear car had become so imperfect that it had dropped out of position to the extent of three and a half inches, which rendered it unsafe for use. Under a rule of the company, of which intestate had knowledge, he was required to be on hand thirty minutes before starting on the trip, to examine the train to ascertain that it was in proper order, and it must be presumed·that he performed this duty, unless a special finding of the jury hereafter referred to establishes his omission in that respect.

In addition to the general verdict, the jury found specially that the train became uncoupled before the collision; that, at the time it parted, the alleged defective drawbar was three and a half inches lower than the connecting one on the adjacent car, which defect was the cause of its uncoupling; and made affirmative answer to a further question which defendant regards as decisive in its favor. This question was numbered 4, and is as follows:

> "If you find that the west drawbar on car No. 53,436 was then lower than the drawbar to which it was coupled, would the deceased, Jacob C. Schneller, have observed that if he examined the train in question before leaving Waseca, if he exercised reasonable care in making such examination."

The jury found, in answer to two other questions, that the engineer and fireman were negligent in not observing·the parting of the train and acting upon that knowledge, which rests upon the view that if they had been properly attentive to their duties they would have discovered the break in time to have increased the speed of the engine so as to have pulled the forward section out of the way of the rear one and thus avoided the collision.

The contention of the defendant is that intestate must have disobeyed the rule which required him to examine the train before leaving Waseca; or he must have discovered the full extent of the defect in the drawbar which caused the break, and be held to have assumed the risks and dangers arising from its use when he went out upon the trip.

It is undoubtedly the law that, if a special finding is radically inconsistent with any sensible interpretation of the general verdict, the

former must control.   Twist v. Winona & St. Peter R. Co., 39 Minn. 164, 39 N. W. 402; Vogt v. Honstain, 85 Minn. 160, 88 N. W. 443; Roe v. Winston, 86 Minn. 77, 80, 90 N. W. 122.   But if the general verdict may be reconciled upon any·reasonable hypothesis justified by the evidence, or fairly inferable therefrom, the presumption is it embraces all the facts essential to the result reached thereby.   Benz v. Geissell, 24 Minn. 169.   This presumption does not apply to a special finding.   Schneider v. Chicago, B. & N. R. Co., 42 Minn. 68, 43 N. W. 783; Nettersheim v. Chicago, M. & St. P. Ry. Co., 58 Minn. 10, 59 N. W. 632; Eklund v. Martin, 88 Minn. 441, 92 N. W. 406; Ready v. Peavy Ele. Co., 89 Minn. 154, 94 N. W. 442.

If, as claimed for the defendant, the rule referred to required intestate to examine the coupling appliances of his train, and this duty was performed—which conclusion is consistent with the general verdict —it does not absolutely follow that, because he noticed that the defective drawbar was lower than others on similar cars, he knew the actual extent of the difference in their relative heights, or that this discrepancy made a particular one so dangerous that he must have known the risks and hazards of its use.   Under the evidence a variation in the height of drawbars two inches from what was considered the standard position was permitted; hence the discovery by the intestate of a drawbar lower merely than the correct height, as disclosed in the fourth finding, is fairly reconcilable with the legal inference in the general verdict that intestate not only exercised ordinary care in making the examination required by the rule, but did not appreciate to its full extent the hazards and risks he was incurring by its use.   Russell v. Minneapolis & St. L. Ry. Co., 32 Minn. 230, 20 N. W. 147; McDonald v. Chicago, St. P., M. & O. Ry. Co., 41 Minn. 439, 43 N. W. 380; Cook v. St. Paul, M. and M. Ry. Co., 34 Minn. 45, 24 N. W. 311; Gray v. Commutator Co., 85 Minn. 463, 89 N. W. 322.

It is insisted for defendant that an instruction given by the court to the effect that intestate was required to examine the appliances of his train, and if, in the exercise of reasonable care, he would have discovered the defective drawbar, he assumed the risks of being injured thereby, became the law of the case, and should control and give effective force to the fourth finding as against the general verdict; but we are unable to adopt this view.   This instruction excludes the consideration

that the knowledge of a defective appliance necessarily imposes upon the employee using the same the risks and dangers that result therefrom, which, as held in the cases above cited, would not necessarily follow. If the instruction was too favorable to defendant, the latter has no right to complain, for plaintiff should only be bound by the law applicable to the issues and evidence. The defendant did not ask for a new trial, but rested its rights entirely upon the contention that the special finding referred to was a determination that authorized judgment absolutely in its favor, and an erroneous instruction cannot be utilized by the defeated party to deprive a litigant of the benefit of a hearing on the merits, and cut him off from having his rights determined in another trial, which defendant did not ask, and has therefore waived. Bragg v. Chicago, M. & St. P. Ry. Co., 81 Minn. 130, 83 N. W. 511.

Judgment affirmed.