WALTER JOHNSON v. CROOKSTON LUMBER COMPANY.[1]

HOKEN JOHNSON v. SAME.

June 9, 1905.

Nos. 14,297—(90).

**Master and Servant—Adjustment of Saws.**

Upon evidence tending to show that a youth of immature years was required to trim shingles through the operation of two saws in a mill, where such saws were so adjusted as to be rendered much more dangerous by reason of a definite change in the adjustment, held:

1. That a failure to inform the operative of the change of adjustment by the master might be negligence for which the latter would be liable for injury thus caused.

2. That the immature age of the operative, in connection with obscurity in the surroundings of the saws, and the fact that the superintendent had given the operator information which diverted his attention from the real danger he incurred, made the question one for the jury whether an injury in this case was attributable to the defendant's negligence or the fault of the injured party.

3. That the question whether the foreman of the mill was an independent contractor and directly responsible for the injury was properly submitted to the jury upon the evidence.

Separate actions in the district court for Red Lake county; by Walter Johnson, an infant, to recover $1,999 for personal injuries, and by Hoken Johnson, father of Walter Johnson, to recover $1,590, for the loss of his son's services by reason of such injuries. The cases were tried together before Watts, J., and a jury, which rendered separate verdicts for $800 and $150 respectively in favor of plaintiffs. From an order granting respective motions for judgment in favor of defendant, notwithstanding the verdicts, plaintiffs appealed. Reversed and judgment ordered for plaintiff in each case.

*W. E. Rowe,* for appellants.

*Davis & Hollister,* for respondent.

LOVELY, J.

Walter Johnson, a lad of immature years, was injured while at work as a knot sawyer in the mill of defendant at St. Hilaire, and

1 Reported in 103 N. W. 891.

brought this action through his guardian for damages. His father al- so brings suit for the damages he sustained for loss of his son's serv- ices. Both actions by consent were tried together. At the close of the testimony, directed verdicts were similarly asked in behalf of each defendant, which were denied. There were verdicts for the plain- tiffs respectively, after which defendant moved for judgments in its favor notwithstanding the verdicts which were granted. From these orders plaintiffs appeal.

An examination of the record justifies the following statement of facts: Walter Johnson, the plaintiff, was a youth of sixteen years, of not more than ordinary intelligence of lads of that age. He was employed by Richard Duntley, who had charge of the shingle depart- ment in the St. Hilaire Mill of the Crookston Lumber Company. Plaintiff commenced work about the middle of June, 1903, and con- tinued in this service until about August 1. His duty was to attend two circular saws set upon shafts, run by motive power, and used for trimming knots and rough edges from shingles. The saws were set in a table about four feet from each other, the deck of the table was low, being only two and a half feet above the floor, the saws being about four inches above its surface. Two inches above the saws was a guard of wood which covered the same, and was slightly slanting downward to prevent the rough shingles requiring trimming from falling on the saws while in motion. During the first portion of plain- tiff's service he had been engaged a little over a month alternately working on both saws as occasion required, but received assistance when needed from a workman named Fisher, an employee in the lath department of the mill, who, when not occupied there, would change to the saws and work with plaintiff in trimming shingles; the plaintiff and Fisher both having that right, and either being required, under the instructions given, to work on either saw as occasion required. In order to facilitate the work of the operators, there were two mov- able slides, which ran adjacent to and passed the saws, to convey or carry the shingles to and by the same for trimming. The process was very simple. The shingle would be placed upon the slide, then pushed forward by the hand of the operator until it came in contact with the saw, and would be thereby trimmed to the desired size and shape. By a process of adjustment during the period when plaintiff first worked on the saws, the slides were so arranged that one passed

the left side of the adjacent saw and the other the right side, making one easier and safer for use by a left-handed person, and the other for a right-handed person.

This was the condition of the saws and adjacent slides on which the boy worked a little more than a month, in June and July, when there was a disagreement between him and his foreman, Duntley. He then left the mill for a time, but was re-employed about August 12, following, and went back to work at his former occupation. In the meantime, during the boy's absence, the slides had been changed or readjusted, the one which had hitherto been at the left of the saw being placed at its right side, and the one at the right at its left, but they were operated in other respects in the same way. When plaintiff recommenced work he was informed by Duntley that there had been a change with reference to the adjustment of the slide at the right end of the table by placing such slide at the left, instead of the right as formerly, although nothing was said about a change of the same kind at the other saw. The boy commenced work upon his re-employment, using the left-hand slide at the right of the table, and continued there trimming shingles for about an hour. The rough shingles accumulated to a considerable extent, and Fisher, who was relieved, came from the lath department and took plaintiff's place, who then went over to the other saw, without knowing, as he claims, that the slide there had been changed in the respects stated. He took a shingle from the covering above, pulled it down, placed it on the slide with his left hand, and therewith pushed it forward against the saw, and, without observing the danger thus incurred, inadvertently pressed his fingers upon the rapidly revolving teeth of the same. The fingers were badly mangled, and his left hand seriously injured.

The substantive ground of negligence charged against the defendant is that the foreman, Duntley, failed to inform the operator of the change in both saws which had been made during his absence from the mill. Upon this issue the jury found for the plaintiffs, and we have no doubt that their verdict was in this respect sufficiently supported by the evidence. But it is insisted that the boy was himself at fault, and failed to observe sufficient care for his own protection. Considering the immature years of the plaintiff, which must be given due weight, the fact that plaintiff had, as appears, become accustomed

to do his work on both saws almost automatically, also that the guard or covering and accumulations of shingles thereon to some extent obscured the slide he was using at the time when it was being pushed by the saw, and withal—a very important factor on this issue—the specific information which it is claimed the foreman, Duntley, gave to the injured boy, that one of the saws (at the right of the table) had been changed without reference to the other, may have misled him and may have excused the necessary caution which he might oth- erwise have exercised for his own protection, forbids us to hold, as a matter of law, that he was guilty of contributory negligence, or de- prived of the right of recovery on that ground.

Finally, it is insisted strenuously that Duntley was an independent contractor, and that he, rather than the Crookston Lumber Company, employed the operatives in the shingle department where the boy worked, but the evidence is not conclusive in support of this claim. There were, in fact, several departments in the mill, and it appears that Duntley was allowed to hire the employees in the shingle de- partment, among whom was the injured lad, but that they and he were compensated by defendant and carried on its payroll. There was an understanding between Duntley and the defendant whereby the former was to be paid a certain price per thousand for manufacturing the shingles. While he could select and discharge the men, they were subject to the ultimate supervision of the defendant, who might re- quest the discharge of employees if they were not satisfactory and did not fulfil the expectations of the company. Indeed, it was ad- mitted by Duntley that he himself might be discharged if the defend- ant so desired, or that the defendant might terminate its relation with him at any time; and it further appeared that the boy was employed at the particular request of defendant's general superintendent. The rules which we have applied in recent cases to test the liability of one claimed to be responsible as employer, under the rule of respondeat superior, made it fairly a question for the jury, under the evidence in this case, whether such relation existed between the injured boy and the defendant company. Gahagan v. Aermotor Co., 67 Minn. 252, 69 N. W. 914; Roe v. Winston, 86 Minn. 77, 90 N. W. 122; Klages v. Gillette-Herzog Mnfg. Co., 86 Minn. 458, 465, 90 N. W. 1116.

It follows that the discretion of the learned trial court in ordering

judgments in both cases against plaintiff must be reversed, and the causes remanded with instructions that judgments be entered in conformity with the verdicts returned according to the proper procedure in such cases.

Reversed and judgments ordered for plaintiffs.