### SILAS E. ROBBINS v. NEW YORK LIFE INSURANCE COMPANY.[1]

No. 30,410.

August 9, 1935.

[1]Reported in 262 N. W. 210, 872.

206

*Doherty, Rumble & Butler* and *Robert O. Sullivan,* for appellant.
*L. M. Carlson* and *Will A. Blanchard,* for respondent.

HOLT, JUSTICE.

Defendant appeals from the judgment in favor of the plaintiff. There was a motion for a directed verdict and a motion, after trial, for judgment notwithstanding the verdict. There was no motion for a new trial. There were a number of special questions submitted to and answered by the jury, in addition to the general verdict.

There being no motion for a new trial, the review here is limited to a consideration of whether there is any evidence reasonably sufficient to sustain the verdict. International Harv. Co. v. National B. & I. Co. 184 Minn. 548, 239 N. W. 663; Freeman v. Morris Constr. Co. 185 Minn. 503, 241 N. W. 677.

Plaintiff, the beneficiary of a life insurance policy issued to his son, Harold C. Robbins, brought the action to recover the amount of the policy. The policy was issued as of the date of April 28, 1931. The premium for one year was paid. This, with the 31 days' grace period provided for in the policy, carried it in force until May 28, 1932. The premium due April 28, 1932, was not paid, and the policy lapsed on May 28, 1932. The policy contains the following provision for reinstatement:

"This policy may be reinstated at any time within five years after any default, upon presentation at the Home Office of evidence of insurability satisfactory to the Company and payment of overdue premiums with six per cent interest thereon from their due date."

On the 15th day of June, 1932, the insured made a written application for reinstatement of the policy on a form used by the company for that purpose. This application, together with a request changing the mode of premium payments from annual to quarterly and a check for the quarterly premium with interest from May 28, 1932, was sent by mail from Anoka, Minnesota, to defendant's branch office in St. Paul, Minnesota. It was received at the St. Paul office on June 17 and approved by the cashier of that office on June 20, 1932. It was then forwarded to the home office in New York and received there on June 23, 1932. The reinstatement was approved at the home office. The insured died on July 27, 1932. Proofs of death were duly made. Liability was denied by the defendant on the claimed ground that the reinstatement of the policy had been procured by fraud of the insured and by false statements made by him in his application for reinstatement. The application for reinstatement required the insured to answer these two questions:

1. "Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this policy was issued?" To which question the insured answered, "Yes."

2. "Within the past two years have you had any illnesses, diseases, or bodily injuries, or have you consulted or been treated by any physician or physicians?" To which question the insured answered, "No."

These two questions were submitted to the jury, and the jury was asked to find by special verdict whether the insured had answered each question truly or falsely. The jury returned its special verdict wherein it found that the insured had answered the first question truly and had answered the second question falsely. The jury further found that the false answer was not made with any intent to deceive or defraud the company, and also found that such representation did not increase the risk of loss. The jury then found a general verdict in favor of the plaintiff for the amount insured by the policy, $1,500.

On June 16, 1932, the insured consulted Dr. Mork, a physician at Anoka. He complained of a little stiffness in the neck and a swelling behind the right ear and said the condition had been present for several days. The physician found a small swelling back of the ear, over which was what is known as a Denver mud pack covering the swelling. The doctor made a tentative diagnosis of mastoid infection and directed that the insured be taken to Minneapolis to be examined by an expert. He was taken to Minneapolis that same evening, accompanied by his physician, and was there examined by Dr. Curtin, an expert in eye, ear, nose, and throat diseases. Dr. Curtin agreed with the local physician that there were indications of mastoid infection, but advised that an X-ray be taken before proceeding further. An X-ray of the affected area was taken the next morning and showed quite an extensive destruction of the mastoid cells on the right side. Thereafter, on the same morning, an operation for mastoiditis was performed. Pus oozed from the incision, and a large amount of necrotic or destroyed bone was discovered. The diseased parts were curetted. The op-

eration apparently removed the trouble in the mastoid area, and the insured improved so that he returned to his home on June 22. There was still some drainage from the wound, and Dr. Mork saw him at his office every day for a while for dressings. He was getting along fairly well until July 22, when he complained of headache and vomiting and started to become a little delirious. He was taken back to the hospital on July 23, and Dr. Curtin reopened the mastoid. This operation disclosed that the mastoid area was healing nicely and that there was no further trouble there. A spinal puncture disclosed quite an amount of pus in the spinal fluid, and the trouble was diagnosed as abscess of the brain. On July 24 an operation was performed, cutting through the lining of the brain. An abscess was found and drained. The insured did not recover and died on July 27 from meningitis, caused by the brain abscess. The opinion of the doctors, who testified as to the condition, was that the brain abscess had a connection with the mastoid infection and resulted from infection working through into the brain.

The reinstatement of a policy of life insurance after a default in payment of premiums is a somewhat different transaction from the original making of the contract for the insurance. The policy has lapsed and is in abeyance, but there remains the right of the insured to have the policy reinstated upon furnishing to the insurance company at a specified time after default in payment, in this case within five years, evidence of insurability satisfactory to the company and payment of overdue premiums with interest. The original contract is the contract for insurance. The reinstatement contract is one to revive the lapsed policy under the provisions stated. As shown in this case, the company does not require medical examination of the insured or the same particularity of information as to the insured on application for reinstatement as it does on application for insurance. The company had the right to require such amount and form of information as to the health of the insured and his record since the issuance of the policy, or prior thereto, as it saw fit, and to require medical examination and report as a condition to reinstatement. It elected to require only

favorable answers to the two questions mentioned, for that purpose. These two questions were prepared by defendant and made a part of the application for reinstatement presented by it to the insured. These two questions will now be considered. The first is: "Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this policy was issued?" Had the question been so framed as to call for the fact whether he was in the same condition of health at the time he signed the application for reinstatement as when the policy issued, a false answer, though innocently made in the belief that it was true, would, under our decisions, bar a recovery, because the misrepresentation would increase the risk of loss. Mack v. Pacific Mut. L. Ins. Co. 167 Minn. 53, 208 N. W. 410; Elness v. Prudential Ins. Co. 190 Minn. 169, 251 N. W. 183, and the prior decisions referred to in both cases. But where the insurance company, as here, elects to accept and rely upon a statement of the insured "to the best of his knowledge and belief," then the harsh rule under 1 Mason Minn. St. 1927, § 3370, does not apply. There is nothing in the question which calls for a present or continuing warranty or representation of good health. A case in point upon the construction of a statement made upon one's best knowledge and belief is Stanyan v. Security Mut. L. Ins. Co. 91 Vt. 83, 99 A. 417, L. R. A. 1917C, 350. The defendant was free to annex any reasonable condition it chose to the acceptance of reinstatement of a lapsed policy; but the conditions it did require and formulated should not be expanded in its favor by construction. Rather, they should be construed most favorably to the assured. The burden was upon defendant to prove that insured's answer to the first question was false. We think it failed in this as the jury found. There can be no doubt that the evidence warranted the jury in finding that to the insured's best knowledge and belief his health was as good when he signed the application on June 15, 1932, and paid the premium required with interest from the time the lapse occurred as it was when the policy issued to him.

The second question the jury found the insured answered falsely. Defendant now claims that this finding is inconsistent with the

general verdict, and therefore under the rule that a special verdict controls the general verdict it is entitled to judgment in its favor notwithstanding the verdict. But this claim overlooks the special findings of the jury that the insured had no intent to defraud or deceive when he gave the false answer to the second question and that such false answer did not increase the risk of loss. In Awde v. Cole, 99 Minn. 357, 109 N. W. 812, it was held that if it is possible to reconcile an apparently inconsistent special finding with the general verdict it should be done. So also in Krumdick v. C. & N. W. Ry. Co. 90 Minn. 260, 262, 95 N. W. 1122, it was said:

"It is undoubtedly the law that, if a special finding is radically inconsistent with any sensible interpretation of a general verdict, the former must control. Twist v. Winona & St. P. R. Co. 39 Minn. 164, 39 N. W. 402, 12 A. S. R. 626; Vogt v. Honstain, 85 Minn. 160, 88 N. W. 443; Roe v. Winston, 86 Minn. 77, 80, 90 N. W. 122. But if the general verdict may be reconciled upon any reasonable hypothesis justified by the evidence, or fairly inferable therefrom, the presumption is it embraces all the facts essential to the result reached thereby. Benz v. Geissell, 24 Minn. 169. This presumption does not apply to a special finding," citing authorities.

There is no inconsistency between the special finding that the answer to the second question was false and the general verdict, when the special findings that there was no intent to defraud and that the falsity of that answer did not increase the risk of loss are considered. Further, when we consider the second question in the application it will be noted that it is double. It reads: "Within the past two years have you had any illnesses, diseases, or bodily injuries, or have you consulted or been treated by any physician or physicians?" Defendant wholly failed to adduce any testimony that the insured had had any illnesses, diseases, or bodily injuries during the two years preceding June 15, 1932. The earache which was relieved or cured by one dose of aspirin in January, 1932, and the small swelling which a few days previous to June 15, 1932, led Thomas to apply "Denver mud" are not sufficient evidence to require the jury to find the existence of illnesses, diseases, or per-

sonal injuries, as understood in ordinary parlance. Undoubtedly the finding that the insured falsely answered the question is based upon the testimony that he had consulted Dr. Schlesselman in January, 1932, and one Thomas a few days before June 15, 1932. Surely the jury had sufficient warrant in the evidence to find that the treatment by Dr. Schlesselman was for a trivial ailment, and that the failure to disclose such treatment did not increase the risk of loss. And with respect to Thomas, defendant did not see fit to produce him as a witness, and, furthermore, there was testimony that the insured stated to defendant's agent who secured the application for reinstatement of the policy that he had consulted Thomas, but the agent assured him that the company would not consider Thomas a doctor. So the jury were justified in finding that because of not referring to Thomas in the application the risk of loss had not been increased. We regard the special findings in light of the record reconcilable with the general verdict.

Counsel are at variance in respect to the applicability of § 3370 to the reinstatement of a lapsed policy issued thereunder. Plaintiff contends that § 3396 governs because no medical examination was required for reinstatement. We are of the opinion that insofar as statutory law is applicable § 3370 and not § 3396 governs. Of course, defendant, by the very form in which the application for reinstatement of a lapsed policy is worded, recognizes that there is a distinction between an application for insurance subject to a medical examination and an application for a reinstatement of such a policy after lapsing for nonpayment of premium. But it is not important here, for the whole defense was predicated upon the alleged falsity of the answers to the two questions in the application.

Defendant earnestly contends that regardless of the stipulations of the parties or statutory provisions the law exacts of both parties to a life insurance contract *uberrima fides,* and this goes to the extent that there is a continuous representation of the insured that his health is in as good condition when the insurance goes into effect as when the application for insurance was made and the medical examination was had. Or, in other words, if after the

application for insurance is made and before it is accepted and the policy is issued, a change in the condition of the applicant's health takes place, it is his duty to reveal such change to the prospective insurer, and failure to do so is regarded a fraud which voids the policy issued in ignorance of such change. Among the authorities cited to this proposition are Stipcich v. Metropolitan L. Ins. Co. 277 U. S. 311, 48 S. Ct. 512, 72 L. ed. 895; Piedmont & A. L. Ins. Co. v. Ewing, 92 U. S. 377, 23 L. ed. 610; New York L. Ins. Co. v. Gay (C. C. A.) 36 F. (2d) 634; Cable v. United States L. Ins. Co. (C. C. A.) 111 F. 19; Equitable L. Assur. Soc. v. McElroy (C. C. A.) 83 F. 631; Prudential Ins. Co. v. Ashe, 266 Mich. 667, 254 N. W. 243. In each of those cases the insured or the one who acted for him knew of a serious illness intervening between the application and the issue of the policy. Not so here. Dr. Mork testified that the insured made light of his diagnosis of a probable mastoid. We think there are two valid reasons why the authorities above cited do not make for a reversal of the judgment here. The first is: This defense was not pleaded nor litigated by consent.[3] It was not submitted to the jury nor requested to be submitted. The answer specifically set forth the fraud and deceit of the insured to have been his false answers to the two questions hereinbefore discussed, and to a third question the answer to which was on the trial conceded to have been truthful. And the answer averred that when the insured made the application for reinstatement of the lapsed policy he was not, to the best of his knowledge and belief, in the same condition of health as when the policy issued; but, on the contrary, he well knew that in the meantime he had become afflicted with tumor and abscess of the brain, and contrary to such answers the insured within two years prior to the making of the application for reinstatement had had illnesses and diseases, including tumor and abscess of the brain, and had consulted and been treated by physicians therefor, and that on June 15, 1932, the insured was suffering from an advanced stage of tumor or abscess of the brain. There is no averment of a change of health coming to the knowledge

[3]See opinion on application for reargument, *infra*, p. 216.

of the insured subsequent to the making of the application which he failed to reveal to defendant. Not even in the motion for a directed verdict was there an intimation of invoking the proposition of law applied in the decisions last above cited, for the grounds were that "it conclusively appears that at the time of the execution by Harold C. Robbins of the application for reinstatement and at the time the company acted upon that application for reinstatement, Harold C. Robbins was not in the same condition of health as he had been at the time the policy had been issued; and that prior to both said dates the said Harold C. Robbins had consulted and been treated by physicians and other practitioners for an ailment and disease which was other than trivial and passing in character."

The second reason is that it does not appear as a matter of law that a grave change in the health of the insured occurred after the application for reinstatement was made and prior to its acceptance, and certainly the evidence would justify a finding that he did not think his ailment was other than trivial. The defendant's witness, Dr. Mork, testified that the insured made light of his diagnosis of the small swelling back of the ear, on June 16, 1932, as probably a mastoid. The doctors found it an unusual case in that there was an absence of the intense pain and of the discharge from the ear which usually characterize mastoids. The operation appeared successful, and he was discharged from the hospital within five days thereafter. Everything presaged a speedy recovery until July 22, when an unexpected turn for the worse took place. Furthermore, the evidence discloses that the insured informed defendant's agent when the reinstatement application was made that he had consulted and been treated by Thomas. The knowledge so imparted to the agent when soliciting the application must be held the knowledge of the principal under our law. In the case of Stipcich v. Metropolitan L. Ins. Co. 277 U. S. 311, 48 S. Ct. 512, 72 L. ed. 895, a directed verdict for the company was reversed for error of the trial court in refusing to receive evidence that the insured had informed the agent of consultation and treatment obtained from a physician; so within that decision the question of concealment of an ailment or of treatment therefor was a jury

issue. And within the decision of Mutual B. L. Ins. Co. v. Higgin-botham, 95 U. S. 380, 24 L. ed. 499, where reinstatement of a lapsed policy was claimed to have been procured by false statement of the insured, there should not be judgment *non obstante* here. Our own case of Ames v. New York L. Ins. Co. 154 Minn. 111, 191 N. W. 274, also is to the effect that the silence of the insured as to a change in his condition of health subsequent to the signing of the application for reinstatement of the policy and payment of the premium did not warrant a directed verdict. The facts in that case show a more serious change in health than here.

The judgment is affirmed.

Stone, Justice (dissenting).

I cannot agree that the general verdict "may be reconciled upon any reasonable hypothesis justified by the evidence" with the special verdict that the insured answered the second question falsely.

I cannot escape the conclusion that the construction put upon the application for reinstatement, and the admittedly false answer, by my brethren of the majority is based upon a conclusion which is strained to the breaking point, the resulting break being in the plain justice of the matter. To me it seems plain that the one and only purpose of the questions propounded to the insured and the truthful answer wanted is set at naught. That purpose was to procure, to the extent indicated by the questions, evidence of in-surability. At the moment, the insured was suffering from a malady which rendered him uninsurable. He did not know that. But he did know that something was wrong with him, and he had "con-sulted" and had been "treated" by a physician. It is too plain for argument that if he had told the truth in answer to that question there would have been an inquiry by the insurer which would have resulted in a rejection of the application for reinstatement. It is equally plain that the matter misrepresented increased the risk of loss. That is enough to avoid the contract under 1 Mason Minn. St. 1927, § 3370.

Suppose that the fatal malady had been present, as here, at the time the application was signed but that its progress was so slow

that the fatal result would not have come for a year or more. Suppose also, that in the meantime the insurer, discovering the facts, had brought suit against the insured for a rescission of the policy. Is it not plain that as matter of law there would have been judgment for rescission?

JULIUS J. OLSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Stone.

UPON APPLICATION FOR REARGUMENT.

On November 1, 1935, the following opinion was filed.

HOLT, JUSTICE.

Defendant petitions for a rehearing. The principal ground is that this court erroneously considered that the defense of a breach of the continuing representation of insurability of the insured from the date of the application for reinstatement to the moment of its acceptance was not pleaded nor litigated by consent. We still think it was not pleaded, for the averments in the answer upon the subject of representations as to health are obviously directed to show that the insured made untruthful statements in his application for reinstatement. But we have concluded that the opinion is wrong in giving as a reason why defendant was not entitled to a directed verdict that the defense of this continuing representation was neither pleaded nor litigated by consent. And the reason is now withdrawn from both the opinion and the syllabus. If under established principles of law the evidence shows defendant to be entitled to a directed verdict, it was error to deny its motion therefor even though the particular defense established by such evidence was neither pleaded nor litigated by consent. For the purpose of the motion, all the evidence admitted must be considered as properly received. Of course, denial of such motion cannot present for review in this court errors in the charge or omission to submit a fact issue presented by the evidence. If there was in the evidence an issue of fact as to the fraud of the insured in not informing defendant of the mastoidectomy, the court rightly denied defendant a directed verdict.

As pointed out in the opinion filed, defendant had issued its policy on a medical examination to the insured in 1931, which contained a provision for reinstatement in case of a default in the payment of a premium. For such default the policy lapsed on May 28, 1932. On June 15, 1932, on blanks prepared and presented by defendant, the insured applied for reinstatement. Defendant only required as a condition for reinstatement true answers to the questions referred to in the opinion and the payment of the premium defaulted, with interest. The jury has found that there was no false answer to any question material to the risk when the application was made. There remains only the question whether there was such a material change in the insured's health after the application was made and before its acceptance that failure to inform defendant thereof constitutes, as a matter of law, a fraud upon it. Two days after the application was made a change did occur, and the assured then knew that he had mastoid infection and submitted to mastoidectomy. There are undoubtedly maladies so fatal and operations so dangerous that the ordinary person would understand that failure to report the same to the insurer before it accepts the risk would be a fraud; for instance, knowledge of internal cancer or operations for brain tumors. It will hardly do to say that every operation is of such a nature that it would void an insurance contract issued in ignorance thereof. Extracting a tooth may be called an operation. It may cause fatal blood poisoning. We know fatal infection may result from squeezing a pimple or from a scratch of the skin, but no one would claim that an application for reinstatement under the conditions defendant imposed would require any action of the insured until the infection had so advanced that the applicant knew the condition to be serious. In every insurance contract there is a hidden risk. An applicant for insurance may have a fatal malady of which he is ignorant as well as the insurer's medical experts after a careful examination of the risk. As against such unknown conditions, surely the insurer may not avoid the insurance unless there is an express warranty of good health at the time of the acceptance of the risk. Here the conditions were out of the ordinary. The usual pain and tempera-

ture were absent. The doctors did not operate until an X-ray disclosed necrosed bone. The insured made light of the operation. It appeared a success. He was discharged from the hospital in five days. While Dr. Mork testified that mastoiditis is a serious ailment, he also says that mastoidectomy is a frequent operation, without giving what the usual results are. The autopsy revealed that the cause of death was abscesses of the brain. It also showed that the mastoid operated on had healed or was in the process of healing. Dr. Curtin could not say how long the abscesses had existed; they might have been formed after the operation; he thought the operation caused them, although there was no infected tissue between them and the operated mastoid. He stated: "As a rule, with mastoids you don't get a brain complication, but then you do every now and then, so really it isn't an uncommon thing." Without further analysis of the evidence, we think there were presented facts from which a jury could draw the conclusion that the failure to inform the defendant of the mastoidectomy was not a fraud upon it. Its wording of the application is such that the insured could well rest on the assurance that if the three questions were answered truly to his best knowledge and belief, and the premium in default paid, reinstatement took effect automatically. Mutual B. L. Ins. Co. v. Higginbotham, 95 U. S. 380, 24 L. ed. 499; Stipcich v. Metropolitan L. Ins. Co. 277 U. S. 311, 48 S. Ct. 512, 72 L. ed. 895, cited in the opinion, seem to support our conclusion that there was a fact question for the jury. Harnischfeger Sales Corp. v. National L. Ins. Co. 195 Minn. 31, 261 N. W. 580, and other cases cited by defendant in the petition for reargument do not help to solve the question here involved.

Rehearing denied.