## JACOB BERGHUIS v. WILLIAM F. SCHULTZ.[1]

July 26, 1912.

Nos. 17,638—(183).

**Restraint of trade.**

Covenants of a contract for the sale of a mercantile business *held* not invalid as in restraint of trade, or as tending to create a monopoly.

**Liquidated damages.**

Provision of such contract for the payment of a certain sum by the seller in the event of his violation of the terms of the contract *held* to be a stipulation for liquidated damages, and not for a penalty.

**Breach of landlord's contract — measure of damages.**

Where a landlord, in releasing for a valid consideration his tenant from his obligations for the remainder of the term of a lease of a store building, knew that the tenant, in a prior sale of his stock of goods to a third person, had agreed, under condition to pay a certain sum in the event of his default, not to sublet the building for a general merchandise store during the remainder of his term, and it was covenanted in such agreement of release that the landlord would not let the said store for such purpose during the remainder of the time that the tenant's term would have run, the landlord's violation of such covenant rendered him liable, under the rule of

[1] Reported in 137 N. W. 201.

*Hadley v. Baxendale*, 9 Ex. 341, to the tenant for the amount which the latter, by reason of such violation, was compelled to pay to such third person pursuant to the provisions of the contract for the sale of the goods.

**Error to grant judgment notwithstanding verdict.**

Evidence in such action *held* such that it was error for the trial court to grant the defendant's motion for judgment notwithstanding the verdict.

Action in the district court for Waseca county to recover $200 for breach of contract and $200 for loss of time and money expended. The substance of the answer will be found in the opinion, on page 90. The case was tried before Childress, J., and a jury which returned a verdict in favor of plaintiff for $200. From an order granting defendant's motion for judgment notwithstanding the verdict and denying his motion for a new trial, plaintiff appealed. Reversed with directions.

*Fred W. Senn* and *Henry M. Gallagher,* for appellant.
*Moonan & Moonan,* for respondent.

PHILIP E. BROWN, J.

Action to recover damages in the sum of two hundred dollars for breach of contract. The cause was tried to a jury. The court denied the defendant's motion, made at the close of the testimony, to direct a verdict in his favor. The plaintiff had a verdict for $200. Thereafter the defendant moved, on a settled case and the files and records in the action, for judgment notwithstanding the verdict, and in case of a denial thereof then for a new trial. The court granted the motion for judgment, and this is an appeal by the plaintiff from the order.

It appears from the record that the jury might have duly found from the proofs, under the issues, facts as follows: On August 6, 1909, the defendant, being the owner of a store building on lot No. 17, block 4, in the village of Pemberton, leased the same in writing to the plaintiff for the term of two years from August 1, 1909, reserving as rent therefor the sum of $240 a year, payable monthly in advance, which rent the plaintiff therein agreed to pay.

On August 6, 1909, the plaintiff went into possession of the building under the lease and conducted a retail mercantile business therein until July 9, 1910, at which time he sold his stock of merchandise to one M. E. Williamson, who theretofore had conducted a drug store in the same village, and who, shortly thereafter, removed the said stock so purchased to his own place of business. The contract of sale just referred to was in writing, was executed July 9, 1910, and the here material parts thereof are as follows:

"This agreement, made and entered into this 9th day of July, A. D. 1910, by and between Jacob Berghuis, party of the first part, and M. E. Williamson, party of the second part:

"Witnesseth, that the said party of the first part, in consideration of the covenants and agreements of said party of the second part hereinafter contained, hereby covenants with the said party of the second part that the said party of the first part will sell his stock of general merchandise contained in the building on lot No. 17, block 4, in the village of Pemberton, Minn., at invoice prices, and also fixtures. Said first party also agrees that he will guarantee that the said building on lot No. 17, block 4, shall not be rented or let to any other party for the purpose of carrying on the business of general merchandise for the term of one year from August 1, 1910. He also agrees to give bill of sale of the property above specified.

"And the said party of the second part, in consideration of the said covenants on the part of the said party of the first part hereinbefore contained, hereby agrees to and with the said party of the first part that the said party of the second part will buy the said stock of general merchandise above specified, and pay for the same, after invoicing it, in cash.

"Either party to this contract agrees with the other that he shall forfeit the sum of $200 to the other party in case he shall fail to fulfil his part of this contract. Said sum shall be deposited by each party to this contract with the Pemberton State Bank."

At the time of the making of this contract the plaintiff deposited with the Pemberton State Bank $200 for the purpose referred to

therein. On July 21, 1910, the parties to this action executed a written contract wherein the defendant, Schultz, covenanted, in consideration of the covenants and agreements of the said Berghuis therein contained, to fully release him from all of the obligations for the remainder of the term under the said lease of the building above referred to, and agreed with the said Berghuis therein that he (Schultz) would not "let" the said store building for the purpose of carrying on the business of general merchandise for the term of one year from August 1, 1910. Berghuis agreed therein to pay to Schultz $75 and to give other consideration for his said covenants. The plaintiff, after the execution of this contract, duly performed the conditions and agreements thereof by him to be performed, and vacated the building. Thereafter, and in September, 1910, the defendant, in violation of his contract, and with knowledge of the plaintiff's contract with Williamson referred to, rented his building to a firm known as Greiner & Co., who thereafter conducted a general merchandise business therein in October, 1910, and subsequently. On November 5, 1910, the Pemberton State Bank, by its cashier, paid to the said Williamson the sum of $200, being the amount which had been deposited with it by the plaintiff under the contract of date July 9, 1910. The plaintiff seeks to recover this sum in this action.

The complaint set out, as grounds entitling the plaintiff to relief, the facts above stated. The answer, so far as is here material, denied that the plaintiff had been damaged in any sum by any act of the defendant, further denied that the defendant had leased his building to Greiner & Co., and alleged by way of defense that the contract of date July 9, 1910, was made for the purpose of creating a monopoly in Williamson of the business of general merchandise in the village of Pemberton, and was therefore void, and also that the defendant's signature to the contract of date July 21, 1910, was obtained by fraud, and that such contract was also void.

Much consideration seems to have been given to the defense of monopoly and restraint of trade on the trial below, and the court charged at length thereon. It appears, however, from the memorandum of the trial judge, attached to the order appealed from, that

the sole ground upon which he ordered judgment in the defendant's favor notwithstanding the verdict was that the evidence was not sufficient to establish a letting or renting of the building by him to Greiner & Co. subsequently to the making of the contract of date July 21, 1910, between the plaintiff and the defendant. The court asserts in the memorandum that "there was no evidence in the case from which the jury could say that the building had been rented or let."

1. Logically the first question requiring consideration is the defendant's claim, set up in the answer, that that part of the contract between the plaintiff and Williamson, wherein the plaintiff undertook that the defendant's store building would not be rented or let for the purpose of carrying on a general merchandise business for one year from August 1, 1910, was void as being in restraint of trade, and as being executed for the purpose of creating a monopoly of the said business in the village of Pemberton. And while this question has not been discussed by either of the parties to this action to any extent, it is of prime importance in the determination of this case; for if the position taken by the defendant, in his answer and in the court below in this regard, is correct, then the plaintiff could in no event recover in the action, and the order appealed from should be affirmed.

The defendant's contention cannot, however, be sustained. In addition to the facts above set out, it appeared that Pemberton was a village of about fifty inhabitants and that at the time of the making of the contract between the plaintiff and Williamson there were two mercantile establishments doing business therein; and in view of the nature of the business, the smallness of the village, the fact that the number of stores of the kind involved was not reduced by the transaction, and the short time that the contract was to run, we hold, as a matter of law, that the contract was not void, either as creating a monopoly or as being in restraint of trade, though the covenant complained of was concededly made for the purpose of preventing the establishment of another store in the village. Indeed, if the jury had found otherwise on this question, their verdict could not have been sustained. National Benefit Co. v. Union Hospital Co. 45

Minn. 272, 47 N. W. 806, 11 L.R.A. 437; Kronschnabel-Smith Co. v. Kronschnabel, 87 Minn. 230, 91 N. W. 892; State v. Duluth Board of Trade, 107 Minn. 506, 524, 121 N. W. 395, 23 L.R.A. (N.S.) 1260.

2. The defendant contends that the provision for the payment of the sum of $200 in case of default under the contract between the plaintiff and Williamson, of date July 9, 1910, is void as being in effect a provision for a penalty, and therefore unenforceable, and further, that as the plaintiff, under no circumstances, can show that he suffered actual damages by reason of the defendant's renting of the building subsequently to his contract to refrain from so doing, and further, that as this court will in no event reverse an order simply to enable a party to recover merely nominal damages in an action on contract involving only monetary considerations (Kramer v. Perkins, 102 Minn. 455, 113 N. W. 1062, 15 L.R.A.(N.S.) 1141; Goulding v. Ferrell, 106 Minn. 44, 117 N. W. 1046), in no event should the order appealed from be disturbed. It may be conceded, for the present purposes, that all of the defendant's contentions in this regard are correct, save only the claim that the contract referred to stipulates for a penalty; but to the latter contention we cannot accede. Few principles of law, if any, are more difficult of application than those pertaining to penalties or liquidated damages.

The defendant analyzes the contract in question and claims that therein the plaintiff agrees (1) to sell his stock of merchandise, (2) that the building would not be rented for the purpose of carrying on a general merchandise business therein for one year, and (3) to give a bill of sale; and that Williamson agreed therein (1) to buy the plaintiff's stock at its invoice price, (2) to invoice the stock, and (3) to pay for same in cash. He further insists that this branch of the case comes within the rule announced in Carter v. Strom, 41 Minn. 522, 43 N. W. 394, as follows:

"Where a contract, specifying one certain sum as liquidated damages, contains various stipulations, to all of which the clause as to damages is clearly applicable, such stipulations either varying greatly in their character and importance, or being of such a nature that the damages from a breach of some of them could be easily and certainly

measured, and especially if such damages would obviously be inconsiderable as compared with the sum stated in the agreement as damages, the latter should be regarded as a penalty, and not as liquidated damages."

This rule, however, is stated in the abstract, and its application manifestly depends largely upon the intention of the parties as to what provision of their contract the stipulation as to damages is designed to apply. We think that the instant case is not within the rule, and that this conclusion is inevitable from a reading of the whole contract and a consideration of the circumstances of the parties. Moreover, the parties gave the contract a practical construction which accords with our conclusion when they left the $200, put up by the plaintiff, on deposit long after every other covenant and condition of the contract, except that relating to the reletting of the building, must have been performed. We hold that the provision in question was for liquidated damages, and not for a penalty.

3. As to the measure of damages in the instant case, we hold that if the contract of date July 21, 1910, is valid—and the jury evidently found that it was—and if at the time of its execution the defendant knew of the contract between the plaintiff and Williamson of date July 9, 1910, and of the plaintiff's undertaking therein that the building referred to would not be let for the purpose of carrying on a mercantile business therein during the remainder of the plaintiff's term, all of which the jury likewise must have found under the instructions of the court, then the right of the plaintiff to recover the $200 is clearly sustained by the rule of Hadley v. Baxendale that such sum may be recovered as may reasonably be supposed to have been contemplated by the parties, when making the contract, as the probable damage which would result from its breach.

4. Was the defendant entitled to judgment notwithstanding the verdict? The rule governing such application is thoroughly settled. Such relief is not proper where the evidence offered, if true, establishes a cause of action, nor where there is a clear conflict in the evidence. Hess v. Great Northern Ry. Co. 98 Minn. 198, 108 N. W. 7, 803. Nor is it alone sufficient that the evidence is such that

the trial court might properly, in the exercise of its discretion, grant a new trial; and if there is some evidence reasonably tending to prove a cause of action, the application should not be granted. 2 Dunnell, Minn. Dig. § 5082.

As stated, the trial court granted the defendant's motion on the sole ground that there was no sufficient evidence of the defendant's letting of the building to Greiner & Co., and, further, that it was shown that the defendant did not let the building, but, on the contrary, sold or traded it. We think, however, that the court was wrong in the premises, and, furthermore, that there was no valid ground for the defendant's motion.

An apparently reputable witness, whose testimony was unimpeached, testified as follows, as shown in the paper book at folio 134, et seq.: . "Q. Did Mr. Schultz ever tell you he rented it [the building] to anybody else? A. Yes. Q. After Berghuis went out? A. Yes. Q. To whom did he say that he rented it? A. He said to me that he rented it. Q. To what parties did he say that he rented it? A. Greiner & Co. Q. Do you remember what time he told you that? A. It must be some time in September. Q. 1910? A. Yes." And at folio 181 we find testimony from the same witness as follows: "Q. You testified on cross-examination that Mr. Schultz told you that he rented this building? A. Yes. Q. Did Mr. Schultz tell you for how much per month he rented this building? A. Yes. Q. How much did he say he was renting it for? A. He said that he rented it for $25 per month. Q. Did he say to whom? A. Yes. Q. To whom? A. Greiner & Co."

The only testimony contradicting the above was given by the defendant. He testified that he did not rent the building, but, on the contrary, that before Greiner & Co. went in he traded it for some land in North Dakota on which he paid the taxes, and that after such trade he was paid for repairing the building. His testimony, however, was very unsatisfactory. At folio 69, et seq., of the paper book, we find him testifying that he could not remember the date of the claimed sale of the building, or even when it was made, or how long after the lease was signed. At folio 103, et seq., he testified that he did not remember the time when he traded off the building,

because he did not know, and that it was impossible for him to remember; that he never made a deed to the building property; that the trade was made with Mr. Greiner, but that he never received a deed for the Dakota land, and that Greiner had received no deed for the store; that he could neither tell nor remember how long ago the trade was made; that he expected to get a deed after he had paid off a mortgage on the store; that no money was paid him when the trade was made, and no writing was executed; that he had not seen the Dakota land, could not tell in what county it was, and did not remember what town it was near.

This, and similar testimony given by the defendant, is the proof of a trade or sale, as distinguished from a letting, to which the trial court adverts in its memorandum; but, frankly, we are not at all impressed with its reliability. It reminds us of a conversation from Robert Louis Stevenson's "Kidnapped," between Allan Breck and David Balfour: " 'Can you swear that you don't know him, Allen?' asked David, referring to the Appin murderer. 'Not yet,' replied Allan; 'but I've a grand memory for forgetting, David.' " Indeed, it can hardly be said that such testimony creates a conflict in the evidence on the issue in question. Certainly it was insufficient to warrant the trial court's utter disregard of the positive testimony as to the defendant's admissions. We hold, therefore, that the trial court erred in granting the defendant's motion for judgment notwithstanding the verdict.

It is ordered that the trial court's order granting the defendant's motion for judgment be reversed; but, the defendant having moved for a new trial in case his motion for judgment were not granted, it is further ordered that the defendant be given leave to apply to the court below for a new trial upon the single issue as to whether the defendant did "rent" or "let" the building therein involved subsequently to August 1, 1910, and prior to August 1, 1911.

Order reversed, with directions.