# SELINA DEMERCE v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

June 20, 1913.

Nos. 18,058—(172).

**Special verdict.**

1. A special verdict which does not determine the nonexistence of a fact upon which the general verdict must depend, either under the issues as made by the pleadings, or the course of trial, neither controls nor is inconsistent with the general verdict.

**Rejection of testimony by jury.**

2. Because a witness has wilfully falsified in respect to a material issue, the jury may reject his uncorroborated testimony upon other issues, but are not compelled to do so.

**Verdict sustained by evidence.**

3. Evidence *held* to sustain the findings of the jury that plaintiff's intestate was killed in the attempt to uncouple a car equipped with a defective automatic coupler.

Action in the district court for St. Louis county by the administratrix of the estate of Timothy Demerce, deceased, to recover $7,500 for the death of her intestate. The facts and negligence alleged are stated in the opinion. The answer specifically denied that any of defendant's cars or the couplings thereof were out of order, or that it was guilty of negligence in any manner, and alleged that the decedent was injured through his own negligence. The case was tried before Hughes, J., who, at the close of the testimony, denied defendant's motion for a directed verdict, and a jury which returned a verdict for the amount demanded, and answered in the affirmative the special question submitted to it, as stated on page 174, infra. Defendant's motion for judgment notwithstanding the verdict on the ground that the special finding of the jury was inconsistent with the general verdict and on the ground that, even without the special finding, the

[1] Reported in 142 N. W. 145.

general verdict was not justified by the evidence, was denied. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Fryberger & Fulton,* for appellant.

*Samuel A. Anderson* and *Warner E. Whipple,* for respondent.

HOLT, J.

This is an appeal from a judgment awarding plaintiff damages for the death of her intestate by the defendant's wrongful act. There was no motion for a new trial, hence the sole inquiry is: Does the evidence reasonably support the judgment?

The defendant confidently contends that the special verdict, returned in this case, destroys the general verdict and conclusively determines that no cause of action was proven, and secondly that, even if such conclusive effect be not given the special verdict, the judgment finds no reasonable support in the evidence.

The evidence either proved or tended to prove these facts: Plaintiff's intestate, Timothy Demerce, an experienced railroad switchman, was on the evening of August 12, 1911, in the employ of the defendant and and engaged in switching cars in its yard on Rice's Point, between Duluth and Superior. In going from Duluth towards Superior, the main line runs in a southeasterly direction. At a certain point a lead track diverges to the left. From this lead track eight switch tracks diverge to the right, running southeasterly and parallel with the main track. The first switch track after the lead track leaves the main track is known as No. 1. The rest are known by the successive numbers. The switches controlling these switch tracks were to the east of the lead track so that passing the main·track and along the lead track towards Superior, all the switches would be on the left side. In the operations about to be stated, the locomotive used was headed toward Duluth, so that the switches were on the engineer's side. The switching crew had coupled on to some cars on track No. 8 and pulled the string consisting of 16 cars out over the lead track and onto the main track, the purpose being to kick the two rear cars in on track No. 1, and then go back to track No. 7. Harper, the foreman of the

switching crew, had gone into a small office on the west side of the main track and from 60 to 80 feet southerly of the track No. 1 switch, to check over some way bills.  Demerce rode the cars from track No. 8.  The other switchman of the crew, Hugh McKinnon, remained behind for the purpose of lining up the switch for track No. 7, and was thereafter to walk to track No. 1 to see that the coupling knuckle on the car there standing was open so that the two cars to be kicked in would couple to it.  Demerce dropped off the cars when he came to the switch for track No. 1, and, when all the cars had passed the switch some 250 feet, or sufficiently to get momentum for the "kick," he gave the stop signal, having in the meantime lined up the switch for track No. 1.  Thereupon he gave the "kick" signal and the locomotive began backing.  The next movement and work expected of Demerce was to meet the backing train sufficiently far back so as to be able to uncouple the two cars to be kicked in before the balance of the cars reached the switch for No. 1, track, and then give the stop signal so that the switch for track No. 1 might be lined up for the lead track.  This was near 11 o'clock at night. It was dark and cloudy so that the engineer could not see the men, but had to act entirely on lantern signals.  He testified that he received the kick signal from Demerce; was watching him give it for about half a minute, then his light disappeared.  McKinnon's lantern was then not to be seen, and at once he proceeded to stop the train.  When the train was about stopped, a stop signal was given from the fireman's side by Harper, who had rushed out of the little office upon hearing Demerce's outcry as he was being run over. Harper testified that, as he came up, Demerce was just crawling over the east rail at about a point 5 or 6 feet northerly of the switch for track No. 1.  His left leg was run over near the hip and also, his right foot was crushed.  He died within an hour and a half thereafter.

The negligence alleged was failure to have an automatic coupler that could be worked by the lever.  This necessitated the attempt by Demerce to go between the cars, as was the claimed practice, to lift the knuckle or pin.  Under the Federal Employer's Liability Act, which governs here, contributory negligence or assumption of risk is

no defense, and a recovery is permissible if the automatic coupler was not such a coupler as the act requires and because thereof Demerce, in the effort to uncouple, went between the cars and was run over.

The first contention is that the special verdict is inconsistent with the general verdict and controls. For perhaps a valid reason the defendant desired to so discredit the testimony of the switchman Hugh McKinnon on one point that nothing he might have testified to in respect to other matters could be accepted as true. At its request this special verdict or question was submitted to the jury: Did the witness McKinnon, at the time he testified he saw the light held by Demerce disappear and go out, as a matter of fact stand in such position in the rear of the train in question, that he could not see such light so held by Demerce? The answer was in the affirmative. McKinnon had testified that he was on track No. 7, where he could see Demerce's signals, that he saw the kick signal, and saw the light disappear in toward the train, and in a moment thereafter a flash, like a stop signal.

We are unable to hold that the special verdict is inconsistent with the general. For it does not determine a vital issue, upon which the recovery depends, against the plaintiff. This special verdict is not upon any issue made by the pleadings. However that is not decisive, if it negatives the existence of a fact necessary to establish the cause of action. We do not think it does, unless it can be said that there is no other evidence from which the jury could conclude that Demerce went between the cars to uncouple. We do not question, but fully approve the rule announced in Awde v. Cole, 99 Minn. 357, 109 N. W. 812, but there the answers of the jury to the special questions determined the issues litigated adversely to the party for whom was the general verdict. So in Crowley v. Northern Pacific Ry. Co. 46 Wash. 85, 89 Pac. 471, the plaintiff relied for recovery upon the fact that the brakeman of the defendant had wrongfully hit the plaintiff a blow which knocked him from the train. By special verdict, the jury found this was untrue. This finding wiped out the only ground for recovery. Here the special verdict that McKinnon was not in position to see the light of Demerce's lantern when it went out does not

negative the existence of facts from which the jury could find that Demerce went between the cars to lift the coupling pin, because the coupler could not be made to operate. That there is not here fatal inconsistency, see Eklund v. Martin, 87 Minn. 441, 92 N. W. 406; Ready v. Peavy Elev. Co. 89 Minn. 154, 94 N. W. 442; Krumdick v. Chicago & N. W. Ry. Co. 90 Minn. 260, 95 N. W. 1122.

The defendant also claims that, even if the special verdict be not controlling, there is not sufficient evidence to support the judgment. It is true McKinnon's testimony was not taken as true by the jury on one matter, and on another and a decisive issue, namely, the defective coupler, he was the only one to testify. But the rule is well understood that, even if a witness has wilfully testified falsely on a material matter in issue, the jury has, nevertheless, the right to believe his uncorroborated testimony upon some other point in the controversy. The court may properly instruct that the jury is at liberty to disregard all the testimony of such witness, but cannot say they must. Schuek v. Hagar, 24 Minn. 339; State v. Henderson, 72 Minn. 74, 74 N. W. 1014.

It is significant that, upon the issue of a defective coupler, the defendant introduced no evidence. Nor did it attempt by cross-examination of McKinnon to discredit his testimony on that point, or suggest that the two cars were cut off when the accident happened, or that McKinnon was not the one who afterwards uncoupled the cars and found it could not be done by the use of the coupling lever. So the only proposition which was seriously in dispute was, whether Demerce fell over the switchstand when not in the act of attempting to operate a defective coupler, or fell, when between the cars to lift the pin of such coupler. Harper testified that when he came to Demerce and asked him how it happened, the latter said he fell or stumbled over the switchstand. The switchstand was 6 feet from the nearest rail. The cars overhung the rail about 18 inches. Harper, who heard Demerce's outcry and was the first to reach him, says he was then crawling over the east rail. This with the manner in which he was injured is very persuasive that he must have been between the rails when he fell. Then add the engineer's testimony that he observed the kick signals for about half a minute and immediately upon

its disappearance stopped the train.  When the kick signals were given, it is fair to assume that Demerce was approaching a position where he could cut off the two cars and give opportunity for the engineer to stop before the string of cars remaining reached the switch. The wheels of the two cars to be kicked in did not run over Demerce; but the trucks of the next car, in front of which he would be if he fell in the act of lifting the coupling pin, were bloody.  If everything had worked as intended, the cars would have been cut off before they reached the switchstand.  They were not cut off and went past the stand.  It is almost inconceivable if Demerce had stumbled over the switchstand, or fallen in any manner when not between the cars, that he could have been injured in the way he was.  If he had fallen when running alongside the cars, we would expect injury to the arms or head.

Is not the deduction reasonable, almost unavoidable, that Demerce traveled along the backing train, making futile attempts to uncouple the two cars to be kicked, then stepped between to lift the pin with his hand and stumbled over some obstruction?  He was then near if not at the switchstand, and who is to say that, if the deceased used the words attributed to him, he did not refer to the rod, which passes under the rails and which proceeds from and is part of the appliance of the stand itself?  In short, the ordinary course Demerce would pursue, in accomplishing the task he was performing, corroborated by the testimony of the engineer, as to signals given; the disappearance of Demerce's light; the place he was found; the appearance of the trucks; the way in which he was maimed; the location of the switchstand, the cars not being cut off; all seem to point to the conclusion that he went in between the cars to uncouple when the fatal fall occurred.

Giving full effect to the special verdict and having carefully considered the evidence, we hold that the general verdict has support under the settled rule in this state.  Borgerson v. Cook Stone Co. 91 Minn. 91, 97 N. W. 734; Berghuis v. Schultz, 119 Minn. 87, 137 N. W. 201; 2 Dunnell, Minn. Dig. § 5082.

Judgment affirmed.